IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA                           PLAINTIFF/RESPONDENT

V.                              Case No. 2:12-CR-20007-004

JESUS ORDAZ                                          DEFENDANT/PETITIONER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Petitioner's Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 filed August 22, 2014. (Doc. 102) The United States filed its Response on October 8, 2014. (Doc. 107)  Petitioner did not file any reply. The matter is ready for Report and Recommendation.

## I.  Background

On January 25, 2012, Defendant/Petitioner, Jesus Ordaz ("Ordaz"), was named in a thirteen-count Indictment charging him with conspiracy to distribute 50 grams or more of methamphetamine (Count 1) and four individual counts of distribution of methamphetamine (Counts 5, 7-9). (Doc. 1) Ordaz appeared for arraignment with his appointed counsel on February 3, 2012, and he entered a not guilty plea to each count of the Indictment. (Doc. 10)

On July 2, 2012, Ordaz appeared with counsel before Hon. P. K. Holmes, III, for a change of plea hearing. (Doc. 62) A written Plea Agreement was presented to the Court, and Ordaz plead guilty to Counts 8 and 9 of the Indictment charging him with distribution of methamphetamine. (Doc. 62, 63) The Court tentatively approved the Plea Agreement and ordered a Presentence Investigation Report ("PSR"). (Doc. 62)

An initial PSR was prepared by the United States Probation Office on September 10, 2012. On September 25, 2012, the United States made one objection to the initial PSR, stating that Ordaz

-1-

"should be accountable under relevant conduct for the 2 ounces per day over a 3 month period he sold to indicted Co-Conspirator Daniel Lawson." (PSR, Addendum) U.S. Probation agreed with the objection as to drug quantity under relevant conduct, and it revised the PSR to reflect that Ordaz was responsible for 122.48 grams of methamphetamine (actual) and 5.1304 kilograms of a mixture of methamphetamine; and, as a result, Ordaz's Base Offense Level was determined to be 36. (PSR, ¶¶ 81, 87; Addendum) This was increased 4 levels for specific offense characteristics (PSR, ¶¶ 88, 89), plus a 2 level increase for role in the offense (PSR, ¶ 91), resulting in an Adjusted Offense Level of 42 (PSR, ¶ 93). After a three level reduction for acceptance of responsibility, Ordaz's Total Offense Level was determined to be 39. (PSR, ¶¶ 95-97). Ordaz's criminal history resulted in a subtotal criminal history score of 16 (PSR, ¶ 124), and 2 criminal history points were added as the instant offense was committed while Ordaz was still under a criminal justice sentence from State court (PSR, ¶ 124), for a total criminal history score of 18 placing Ordaz in Criminal History Category VI (PSR, ¶ 126). The statutory range for the offense of conviction called for a mandatory minimum of five years and a maximum of 20 years imprisonment. (PSR, ¶ 142) Ordaz's advisory guideline range was determined to be 360 to 480 months imprisonment. (PSR, ¶ 143)

Ordaz made three objections to the initial PSR: (1) he objected to the 2 level enhancement for possession of a firearm; (2) he objected to the 2 level enhancement for his role in the offense as a leader or organizer of the criminal activity; and, (3) he objected to the overall calculation of his criminal history points. (PSR, Addendum) After addressing these objections, no changes were made to the PSR by U.S. Probation. (PSR, Addendum)

The United States filed a Sentencing Memorandum on November 13, 2012, in which it contended that the drug quantity calculation based on relevant conduct was correct, and that the

enhancements for possession of a firearm and for role in the offense were also correct. (Doc. 71) Ordaz filed a Sentencing Memorandum on November 17, 2012, in which he requested a downward departure based on U.S.S.G. § 5H1.4 and § 3553(a) factors, and he suggested a sentence of 180 months. (Doc. 79)

Ordaz appeared for sentencing on November 19, 2012. (Doc. 80) The Court found sufficient evidence to support the drug quantity calculation set forth in the PSR, and the Court overruled Ordaz's objections to the PSR. (Doc. 97, pp. 15-16) The Court found that "the criminal history score may be somewhat overstated," but Judge Holmes commented that even if he were to consider all of Ordaz's prior breaking and entering convictions as just one conviction, "it does not change the sentence range." (Doc. 97, pp. 21-22) The Court expressed concern about the length of a 360 month sentence under the advisory guidelines, stating that such a lengthy sentence would result in an "unwarranted" sentencing disparity, "not just because it is far in excess of what the other co-defendants received," but also "for the type of drug operation this was, it is an extremely long sentence." (Doc. 97, p. 22) Ultimately, the Court varied downward from the advisory guideline range and sentenced Ordaz to 235 months imprisonment on Counts 8 and 9, to run concurrently, followed by four years supervised release on each count, also to run concurrently, no fine, and imposition of $200.00 in special assessments. (Docs. 88, 97) Judgment was entered by the Court on November 20, 2012. (Doc. 88)

Ordaz filed his Notice of Appeal on November 29, 2012. (Doc. 91) He argued on appeal that his offense level was incorrectly set because the quantity of methamphetamine attributed to him was too high, that he should not have received a 2 level enhancement for possession of a firearm in connection with a drug-trafficking offense, that he should not have received a 2 level enhancement

for being a leader or organizer in a criminal activity, and that his sentence was unreasonable. The Eighth Circuit Court of Appeals rejected these arguments and affirmed Ordaz's conviction and sentence. *United States v. Ordaz*, 515 Fed.Appx. 618 (8th Cir. 2013). The Eighth Circuit's Mandate affirming this Court's Judgment was entered on July 11, 2013. (Doc. 99) Ordaz did not file a Petition for Writ of Certiorari with the United States Supreme Court.

On August 22, 2014, Ordaz timely filed his *pro se* Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 (the "Motion"). (Doc. 102) The Motion raises five grounds, four of which relate to claims of ineffective assistance of counsel, to wit: (1) failure to argue that U.S.S.G. § 1B1.3 limited Ordaz's sentence to specific, jointly undertaken activity, instead of the activity of the entire charged conspiracy; (2) failure to argue that the record did not demonstrate that the Indictment was returned in open court; (3) failure to timely investigate and negotiate for a favorable plea agreement; (4) the cumulative impact of multiple deficiencies or errors by counsel during pre-trial, plea, sentencing, and on direct appeal; and, (5) that his conviction and sentence violates the First, Second, Fourth, Fifth, Sixth, and Eighth Amendments to the United States Constitution.

The United States' Response to the Motion was filed on October 8, 2014. (Doc. 107) Ordaz did not file any reply.

## II.  Discussion

"A prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "If the court

-4-

finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). A thorough review of Ordaz's Motion and the files and records of this case conclusively shows that Ordaz is entitled to no relief, and the undersigned recommends the denial and dismissal of his Motion with prejudice without an evidentiary hearing.

### A.  Ineffective Assistance Of Counsel Claims

To prove a claim of ineffective assistance of counsel, Ordaz must demonstrate both that his counsel's performance was deficient, and that counsel's deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the deficient performance prong of the *Strickland* test, Ordaz must show that his counsel's representation fell below the "range of competence demanded of attorneys in criminal cases." *Id*. at 688. Review of counsel's performance is deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689. To establish the prejudice prong of the *Strickland* test, Ordaz must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Ordaz plead guilty to the offenses of conviction. When a guilty plea is entered by the movant, the focus of a collateral attack must remain limited to the nature of counsel's advice and the voluntariness of the guilty plea. *Bass v. United States*, 739 F.2d 405, 406 (8th Cir. 1984), *citing Tollett v. Henderson*, 411 U.S. 258, 266 (1973). As the Court in *Tollett* articulated:

". . . a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. *He may only attack the voluntary and intelligent character of the guilty plea* by showing that the advice he received from counsel was not within the standards set forth in *McMann*[1].

A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge . . . And just as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, (internal citation omitted) it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings." *Id.* at 267. (Emphasis added.)

The rationale and ruling of *Tollett*, while a decision concerning a state prisoner's habeas claims, has been adopted by the Eighth Circuit for application to motions made by federal prisoners under 28 U.S.C. § 2255. *See Bass*, 739 F.2d at 406.

The standard for determining the validity of a guilty plea remains whether it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970), citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969), *Machibroda v. United States*, 368 U.S. 487, 493 (1962), and *Kercheval v. United States*, 274 U.S. 220, 223 (1927). "While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong

---

[1] *McMann v. Richardson*, 397 U.S. 759, 771 (1970) (If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not "within the range of competence demanded of attorneys in criminal cases.")

presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'"
*Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997), quoting *Voytik v. United States*, 778
F.2d 1306, 1308 (8th Cir. 1985). A defendant has a heavy burden to overcome those admissions and
show that his guilty plea was involuntary. *See Blackledge v. Allison*, 431 U.S. 63, 72-74 (1977).

In the present case, Ordaz was represented by experienced appointed counsel, Kevin L.
Hickey, a CJA Panel Attorney, throughout the criminal proceedings leading to and including the
change of plea hearing. Mr. Hickey negotiated a written Plea Agreement with the Assistant United
States Attorney prosecuting the case, and Ordaz acknowledged that his willingness to change his plea
was the result of discussions that Ordaz and his counsel had with the government. (Doc. 96, p. 5) Mr.
Hickey carefully reviewed the Plea Agreement with Ordaz before obtaining Ordaz's signature on it.
(Doc. 33, ¶¶ 24(a), 25(a)) The Plea Agreement informed Ordaz of the counts of conviction, being
Counts 8 and 9 of the Indictment (charging Ordaz with distribution of methamphetamine in violation
of 18 U.S.C. § 841(a)(1)), and the counts to be dismissed. (Doc. 63, ¶ 1) Ordaz acknowledged that
he had fully discussed with his counsel the facts of the case and the elements of the crimes to which
he was pleading guilty; he agreed that he had committed each of the elements of the crimes to which
he was pleading guilty; and, he admitted the factual basis for the plea. (Doc. 63, ¶ 2) The Plea
Agreement advised Ordaz of his constitutional and statutory rights, including the right to persist in
his plea of not guilty. (Doc. 63, ¶ 3) The Plea Agreement also informed Ordaz that at sentencing the
Court will be permitted to consider "all relevant information with respect to defendant's background,
character and conduct, including the conduct that is the subject of this investigation for which he has
not been charged up to the date of this Agreement, and/or which is the basis for any of the counts
which will be dismissed pursuant to this agreement, as provided by § 1B1.3 of the Sentencing

Guidelines." (Doc. 63, ¶ 15) By signing the Plea Agreement, Ordaz acknowledged that: he fully understood the Plea Agreement (Doc. 63, ¶ 24(b)); he was satisfied with the legal services provided by defense counsel in connection with the plea agreement and matters related to it (Doc. 63, ¶ 24(d)); and, he entered into the Plea Agreement freely, voluntarily, and without reservation, and that his desire to enter a plea of guilty was not the result of any threats or coercion (Doc. 63, ¶ 24 (e)).

During the change of plea hearing on July 2, 2012, Ordaz was sworn on oath and examined by the Court about the offenses and the Plea Agreement. The Court inquired of Ordaz about his age and level of education; whether Ordaz was under the influence of alcohol or drugs, and whether Ordaz was able to comprehend the proceedings; and, the possible severity of sentence was explained, as well as Ordaz's constitutional and statutory rights. (Doc. 96, pp. 3-8) Ordaz was specifically asked, "[a]re you pleading guilty of your free will and accord because you are guilty?", to which Ordaz responded, "[y]es, sir." (Doc. 96, p. 7) Ordaz admitted that he understood that at the sentencing hearing the government can bring to the Court's attention, and the Court will consider all past and present information about his background, his character, and any criminal conduct including the dismissed counts of the Indictment. (Doc. 96, p. 9) A factual basis for the pleas was set forth (Doc. 96, pp. 12-13), and both Ordaz and his counsel acknowledged that they believed the government could prove those facts. (Doc. 96, pp. 13-14) Upon such inquiry in open court, the Court determined that Ordaz's guilty pleas to Counts 8 and 9 of the Indictment were voluntary and intelligent, and that there was a factual basis to support the guilty pleas. (Docs. 62, 96)

Ordaz does not allege in his § 2255 Motion that his claims of ineffective assistance of counsel rendered his guilty pleas involuntary, unintelligent, and invalid; but rather, he claims that had his counsel pursued certain aspects of the case differently (1) the drug quantity attributed to him

at sentencing would have been less, (2) the Indictment may have been dismissed, (3) a more favorable plea agreement may have been reached, and (4) that the individual and cumulative impact of counsel's errors prejudiced him. Since Ordaz's § 2255 Motion does not challenge the voluntary and intelligent character of his guilty pleas, it is plainly deficient and subject to summary dismissal. Counsel's alleged failure to correctly appraise the constitutional significance of certain facts, or counsel's alleged failure to pursue a particular factual inquiry that may have uncovered some possible constitutional infirmity in the proceedings, are both insufficient to support vacating a guilty plea voluntarily and intelligently entered. *Tollett*, 411 U.S. at 267. Further, to the extent that the allegations of his § 2255 Motion may be construed to indirectly challenge the voluntary and intelligent character of his guilty pleas, the alleged claims lack merit and are subject to dismissal.

### B. Failure To Challenge Drug Quantity Resulting From Relevant Conduct

Ordaz first contends that his counsel's performance was deficient because counsel failed at sentencing and on direct appeal to argue that U.S.S.G. § 1B1.3 limited his sentence to specific, jointly undertaken activity, instead of the activity of the entire charged conspiracy. (Doc. 102, pp. 3-4, 11-12) While Ordaz's counsel did not object to the drug quantity calculation set forth in the PSR, it was the government's objection to the initial drug quantity calculation that resulted in the increased drug quantity included in the final PSR, and the Court addressed that objection during sentencing. (Doc. 97, p. 15) Moreover, Ordaz's counsel did argue on direct appeal that Ordaz's base offense level was incorrectly set because the quantity of methamphetamine attributed to him was too high.(Doc. 99-2, pp. 2-3)

On direct appeal, Ordaz challenged the Court's decision to attribute 180 ounces of methamphetamine to him based on a co-defendant's "unsubstantiated" statement that he purchased

two ounces of methamphetamine per day from Ordaz for a period of three months. (Doc. 99-2, p. 2) The Eighth Circuit rejected that argument, finding that Ordaz neither offered evidence to the contrary nor objected to the drug-quantity finding in the PSR, leaving the District Court free to accept it as true; and, moreover, that the District Court heard testimony at sentencing from the investigating officer that the co-defendant had indeed reported that Ordaz sold him two ounces of methamphetamine per day for three months, and that all three co-defendants had described Ordaz as their methamphetamine "supplier." (Doc. 99-2, pp. 2-3)

The United States argues that Ordaz is barred from raising this issue again "under the guise of an ineffective assistance claim" as it has already been reviewed by the Eighth Circuit on direct appeal. The Court agrees. "It is well settled that claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2855." *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003), quoting *United States v. Shabazz*, 657 F.2d 189, 190 (8th Cir. 1981). *See also United States v. Davis*, 406 F.3d 505, 511 (8th Cir. 2005)("we find the present claim to be the same claim in different clothes, and we will not reconsider the issue on collateral review"); *Withrow v. Williams*, 507 U.S. 680, 721 (1993)(Scalia, J., concurring opinion)("[s]ince *Kaufman*[2] federal courts have uniformly held that, absent countervailing considerations, district courts may refuse to reach the merits of a constitutional claim previously raised and rejected on direct appeal"); *Loc Huu Bui v. United States*, 2014 WL 582954, at p. 8 (E.D.N.C. 2014)("a petitioner may not circumvent an adverse ruling on direct appeal by recasting it as an ineffective assistance of counsel claim"); and, *Dowdell v. United States*, 859 F.Supp.2d 176, 179 (D.Mass. 2012)("[i]t is settled law that a petitioner may not revive claims already decided on

_____

[2] *Kaufman v. United States*, 394 U.S. 217 (1969).

-10-

direct appeal by cloaking them in 'ineffective assistance of counsel' garb in a § 2255 petition").

Even if the Court were to reach the merits, the argument fails. First, Ordaz's counsel cannot be said to have been ineffective simply because the Eighth Circuit disagreed with his argument on direct appeal and affirmed the District Court's drug quantity finding. Even though counsel's arguments and efforts were unsuccessful, his inability to persuade the Eighth Circuit does not fall below the range of competence demanded of attorneys in criminal cases. *See James v. Iowa*, 100 F.3d 586, 590 (8th Cir. 1996) (counsel is not ineffective simply because his arguments ultimately are unsuccessful). Next, Ordaz specifically acknowledged in his Plea Agreement that "[a]t the sentencing hearing, the government will be permitted to bring to the Court's attention, and the Court will be permitted to consider, all relevant information with respect to . . . the conduct that is the subject of this investigation for which [Ordaz] has not been charged . . . and/or which is the basis for any of the counts which will be dismissed pursuant to this agreement, as provided by § 1B1.3 of the Sentencing Guidelines." (Doc. 63, ¶ 15) Ordaz further acknowledged knowing this during questioning at his change of plea hearing. (Doc. 96, p. 9) U.S.S.G. § 1B1.3, Application Note 10, provides in pertinent part, "in a drug distribution case, quantities and types of drugs not specified in the count of conviction *are to be included in determining the offense level* if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." (Emphasis added.)

Finally, while Ordaz argues that his counsel was ineffective for failing to argue that Ordaz's sentence should be limited to "specific, jointly undertaken activity, instead of the activity of the entire charged conspiracy," that is precisely what the Court considered in determining the drug quantity attributed to Ordaz. This is not a case where the Court determined drug quantity based on

conduct by other co-conspirators of which Ordaz was unaware, or conduct which Ordaz played no part in, during the overall course of the criminal conspiracy to distribute methamphetamine. To the contrary, the conduct resulting in the drug quantity calculation made by the Court was Ordaz's own "specific, jointly undertaken activity" with an indicted co-defendant, Lawson, who stated that Ordaz (not some other co-conspirator) had sold him two ounces of methamphetamine per day for three months. The Eighth Circuit found that the District Court did not err in making its drug quantity calculation based upon such proof and, on collateral review pursuant to § 2255, it simply cannot be said that Ordaz's counsel was constitutionally deficient for failing to advance the argument that the drug quantity should have been limited to "specific, jointly undertaken activity, instead of the activity of the entire charged conspiracy."

As Ordaz has failed to show that his counsel's performance was deficient regarding this issue, there is no need to address the second *Strickland* prong of prejudice. *See United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003) (if a movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim).

**C.  Failure To Challenge Whether The Indictment Was Returned In Open Court**

Ordaz next claims that his counsel was ineffective during the pretrial process for failing to challenge whether the Indictment was returned in open court. (Doc. 102, pp. 4-5, 12-13) This claim lacks merit for two reasons: first, Ordaz waived all non-jurisdictional defects in the proceedings by entering his guilty pleas; and, second, no prejudice can be shown because even if counsel had challenged the defect during pretrial proceedings, the United States could have easily cured the defect by obtaining another Indictment and ensuring that it was returned in open court.

As noted above, a guilty plea represents "a break in the chain of events which has preceded

it in the criminal process." *Tollett*, 411 U.S. at 266. When a criminal defendant has "solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id*. Once a defendant enters a voluntary and unconditional guilty plea, as Ordaz did in this case, the guilty plea has the effect of waiving all non-jurisdictional defects in the prior proceedings. *See United States v. Taylor*, 519 F.3d 832, 836 (8th Cir. 2008); and, *United States v. Vaughan*, 13 F.3d 1186, 1187 (8th Cir. 1994)(a "knowing and intelligent guilty plea forecloses independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea"), *cert. denied*, 511 U.S. 1094, 114 S.Ct. 1858, 128 L.Ed.2d 481 (1994), quoting *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed 2d 235 (1973).

Concerning whether "indictment omissions" are jurisdictional or not, the Supreme Court has noted that the grand jury right can be waived. *See United States v. Cotton*, 535 U.S. 625, 630-31 (2002), citing Fed. Rule Crim. Proc. 7(b) and *Smith v. United States*, 360 U.S. 1, 6 (1959). As the Court held in *Cotton*, defects in an indictment do not deprive a court of its *power to adjudicate a case*, and "indictment omissions" do not deprive a court of jurisdiction. Therefore, any defect in the indictment process, i.e., failing to return it in open court, is non-jurisdictional and is waived upon a defendant's entry of a voluntary and unconditional guilty plea. For this reason, Ordaz's argument that he received ineffective assistance of counsel because his counsel failed to challenge whether the Indictment was returned in open court must fail.

Moreover, there is no showing of any prejudice to Ordaz from counsel's failure to challenge whether the Indictment was returned in open court. The record does not establish that the Indictment was not returned in open court; Ordaz merely speculates that it was not. Even if he were correct

-13-

about that, and his counsel had challenged the validity of the Indictment for that omission, the defect could have been easily cured by the United States obtaining another Indictment and ensuring that it was returned in open court. There is no showing that but for his counsel's failure to litigate this issue that the result, Ordaz's guilty pleas, would have been any different.

### D.  Failure To Secure A More Favorable Plea Agreement

Ordaz's third ground for habeas relief is his allegation that counsel was ineffective for failing to timely investigate and negotiate a more favorable plea agreement. (Doc. 102, pp. 5-6, 13-14) This argument also involves alleged conduct that Ordaz effectively waived upon entry of his guilty pleas.

As discussed in the section just above, it is well established in the Eighth Circuit that a defendant who pleads guilty waives all non-jurisdictional defects or errors. *See also United States v. Stewart*, 972 F.2d 216-217-18 (8th Cir. 1992), citing *Hill v. United States*, 928 F.2d 303 (8th Cir. 1991) and *Smith v. United States*, 876 F.2d 655, 657 (8th Cir. 1989). Having solemnly admitted his guilt in open court, Ordaz may only attack the voluntary and intelligent character of his guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases. *McMann*, 397 U.S. at 771. Ordaz has failed to make any such allegation or showing.

It must first be noted that in his written Plea Agreement, Ordaz admitted that he was "satisfied with the legal services provided by defense counsel in connection with this plea agreement and matters relating to it." (Doc. 63, ¶ 24(d)) At his sentencing hearing held on November 19, 2012, Ordaz again represented to the Court that he was "fully satisfied" with the work done for him by his counsel. (Doc. 97,  p. 3) Even in his § 2255 Motion, Ordaz does not allege that his guilty plea was involuntary or unintelligent; nor does he allege any incorrect advice from his counsel; he just thinks

-14-

that he should have gotten a better deal, e.g., one that only required him to plead to the "basic elements of the crime" and not also to include his relevant conduct. (Doc. 102, pp. 13-14)

Since Ordaz does not challenge the voluntary and intelligent character of his guilty pleas, the United States contends that he is precluded from obtaining collateral review of any independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty pleas, citing the *Tollett* line of cases. As the Supreme Court explained in *Missouri v. Frye*, 132 S.Ct. 1399 (2012), this is not necessarily so.

In *Missouri v. Frye* the Supreme Court addressed a number of questions related to ineffective assistance of counsel in connection with plea bargaining. That case arose in the context of claimed ineffective assistance of counsel that led to the lapse of a plea offer (a proposal that offered terms more lenient than the terms of the guilty plea entered later). The Court first acknowledged that "it is well settled that the right to the effective assistance of counsel applies to certain steps before trial." *Id*. at 1405. With respect to the right to effective assistance of counsel in plea negotiations, the Court determined that a proper beginning point is to discuss two cases in which the Court considered the role of counsel in advising a client about a plea offer and an ensuing plea agreement: *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); and, *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). The Court in *Hill* established that claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*. 474 U.S., at 57. In *Padilla*, the Court made clear that "the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." 559 U.S., at 373. The Court in *Padilla* also rejected the argument, as made by the United States in the instant case, that a knowing and voluntary plea supersedes all errors by defense counsel.

-15-

559 U.S., at 365. "*Hill* and *Padilla* both illustrate that . . . there may be instances when claims of ineffective assistance can arise after the conviction is entered." *Id.*, at 1406.

Citing statistics of the prevalence of plea bargains (i.e., 97% of federal convictions and 94% of state convictions are the result of guilty pleas), the Court in *Frye* commented that, "[t]he reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages (internal citation omitted) . . . it is insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process." *Id.*, at 1407.

One question confronted by the Court in *Frye* was how to define the duty and responsibilities of defense counsel in the plea bargain process, and the Court recognized that "[t]his is a difficult question." *Id.*, at 1408. Due to counsel's failure to communicate the State's plea offer to Frye, and the resultant lapse of the plea offer, the Court had "neither the necessity nor the occasion to define the duties of defense counsel" regarding "[t]he alternative courses and tactics in negotiation" that "are so individual that it may be neither prudent nor practicable to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the process," focusing only on the question of whether counsel had the duty to communicate the terms of a formal plea offer to accept a plea on terms and conditions that may result in a lesser sentence. *Id.* The Court held that defense counsel does have such a duty, and that when counsel allowed the plea offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires. *Id.*

The Court in *Frye* then addressed the question of what, if any, prejudice resulted from the

breach of that duty. The Court noted that "[t]his application of *Strickland* to the instances of an uncommunicated, lapsed plea does nothing to alter the standard laid out in *Hill,*" involving cases where a defendant complains that ineffective assistance led him to accept a plea as opposed to going to trial, but that *Hill* does not "provide the sole means for demonstrating prejudice arising from the deficient performance of counsel during plea negotiations." *Id*. at 1409. In a case such as *Frye*, where a defendant pleads guilty to less favorable terms and then claims that ineffective assistance of counsel caused him to lose a more favorable plea offer, the Court held that "*Strickland's* inquiry into whether 'the result of the proceeding would have been different,' requires looking not at whether the defendant would have proceeded to trial absent ineffective assistance but whether he would have accepted the offer to plead pursuant to the terms earlier proposed." *Id*. at 1410. The Court further held that "[i]n order to complete a showing of *Strickland* prejudice, defendants who have shown a reasonable probability they would have accepted the earlier plea offer must also show that, if the prosecution had the discretion to cancel it or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted and implemented." *Id*. The Court then commented that "*[t]his further showing is of particular importance because a defendant has no right to be offered a plea, nor a federal right that the judge accept it* (internal citations omitted)." *Id*. (Emphasis added.) On this last point, the Court provided some guidance in stating that "in most jurisdictions prosecutors and judges are familiar with the boundaries of acceptable plea bargains and sentences," so that in most cases "it should not be difficult to make an objective assessment as to whether or not a particular fact or intervening circumstance would suffice, in the normal course, to cause prosecutorial withdrawal or judicial non-approval of a plea bargain." *Id*.

In the present case, and unlike the circumstances in *Frye*, there was no previous, more favorable plea offer made to Ordaz. He merely complains that his counsel should have obtained one for him, and specifically, one that only required him to plead guilty to the "basic elements of the crime" and not to any of his relevant conduct. Ordaz has failed to demonstrate constitutionally deficient performance on the part of his counsel in connection with the plea negotiations for the following reasons. Ordaz has never claimed that he wanted to proceed to trial; his plea agreement permitted him to plead to two of the four lesser counts (distribution) of the Indictment and not to the more serious conspiracy charge; and, at sentencing, the Court agreed with some of his counsel's arguments and varied downward from the guideline sentencing range by 125 months. Under such circumstances, the Court cannot reasonably conclude that defense counsel did not act "within the range of competence demanded of attorneys in criminal cases."

The United States points out that Ordaz "fails to appreciate that plea offers are in many instances beyond the control of defense counsel," that they require "the cooperation of the prosecutor," and that "the United States has no obligation to extend a plea offer." (Doc. 107, p. 15) These are all aspects of plea bargaining the Supreme Court addressed in *Frye*; and, in addition, one must consider that a federal judge is not obligated to accept any plea agreement. This was specifically made known to Ordaz in his written Plea Agreement. (Doc. 63, ¶¶ 20, 21)

The Court also notes that where a defendant has plead guilty, courts have rejected claims that defense counsel was ineffective for failing to obtain a more favorable plea agreement. *See Bethel v. United States*, 458 F.3d 711, 720 (7th Cir. 2006); *Craker v. McCotter*, 805 F.2d 538, 542 (5th Cir. 1986); and, *Estabrook v. United States*, 2012 WL 4981147 (D.N.D. 2012)(citing *Bethel* and *Craker*)(claim that defense counsel was ineffective for failure to negotiate a more favorable plea

-18-

agreement failed to properly allege prejudice and was deficient as a matter of law).

In order to show *Strickland* prejudice, pursuant to *Hill*, Ordaz must show a reasonable probability that, but for his counsel's errors, he would not have pled guilty and would have insisted on proceeding to trial. Ordaz makes no such allegation or showing. Moreover, in the context of his claim that counsel should have gotten him a more favorable plea bargain (one that did not include consideration of his relevant conduct), *Frye* would also require that he demonstrate a reasonable probability that the prosecutor would have made such an offer and that the trial court would have accepted it. Ordaz has not done so. Just as the Court in *Frye* observed, prosecutors and judges are familiar with the boundaries of acceptable plea bargains, and one that stipulates away a defendant's relevant conduct is plainly not within those boundaries. The United States Sentencing Guidelines, while advisory, do require consideration of a defendant's relevant conduct, U.S.S.G. § 1B1.3, and it is inconceivable that a plea bargain eliminating the consideration of a defendant's relevant conduct would ever be accepted by this Court. Therefore, Ordaz has also failed to show any prejudice arising from his claims of ineffective assistance of counsel in the process of plea bargaining.

In sum, Ordaz by voluntarily and intelligently entering his guilty pleas effectively waived all non-jurisdictional defects and errors that occurred prior to his pleas; he has not alleged, nor shown, that his guilty pleas were involuntary and unintelligent; he has not shown deficient performance by his counsel in connection with the plea negotiation; nor has he shown any prejudice resulting from any alleged ineffective assistance of counsel in connection with the plea negotiation. Accordingly, Ordaz's third ground for § 2255 habeas relief should be denied.

### E.  Cumulative Error

Ordaz's fourth ground for habeas relief is his claim of ineffective assistance of counsel "due

to the individual and cumulative impact of multiple deficiencies or errors by counsel during the pretrial, plea, sentencing and direct appeal process." (Doc. 102, p. 6) More specifically, Ordaz alleges that: counsel failed to move for dismissal of the Indictment on the ground that it was not presented or returned by the grand jury in open court (Doc. 102, ¶ 38); counsel failed to properly advise Ordaz as to all facts and law relevant to his decision to plead guilty, resulting in a less favorable plea agreement (Doc. 102, ¶ 39); counsel failed to move for suppression of evidence material to the conviction and/or sentence and did not move for dismissal of the indictment (Doc. 102, ¶ 40); counsel failed to investigate or present available evidence and legal authority material to sentencing, and counsel failed to object to unlawful, false, and unreliable evidence used to determine Ordaz's guideline range and ultimate sentence (Doc. 102, ¶ 41); counsel failed to investigate and present the strongest issues available to Ordaz for his direct appeal and failed to preserve viable issues for collateral review (Doc. 102, ¶ 42); and, counsel labored under an actual conflict of interest which adversely affected his performance during the pretrial, plea, sentencing and direct appeal process in this case (Doc. 102, ¶ 43). There is no merit to this ground for relief.

Ordaz essentially re-states three grounds he previously raised, i.e., the failure to challenge whether the Indictment was returned in open court, the failure to obtain a more favorable plea agreement, and the failure to challenge the drug quantity calculation. These grounds have been addressed above and provide no basis for habeas relief.

Ordaz's additional allegations are merely conclusory statements unsupported by any facts. He fails to set forth specifically what evidence his counsel should have sought to suppress, nor does he state the legal basis for any such motion to suppress. (Doc. 102, ¶ 40) He fails to state any specific facts or legal authority to support his allegation that counsel "could have but did not timely move

for dismissal of the indictment." (Doc. 102, ¶ 40) He fails to state any specific facts or legal authority to support his assertion that counsel failed to investigate and present the "strongest issues" for direct appeal and failed to preserve "viable issues" for collateral review. (Doc. 102, ¶ 42) Finally, he fails to state any specific facts or legal authority to support his claim that counsel "labored under an actual conflict of interest." (Doc. 102, ¶ 43) Ordaz fails to substantiate these claims with any factual or legal support, and his failure to do so is sufficient cause for the Court to summarily reject them. *See Richardson v. United States*, 577 F.2d 447, 452 (8th Cir. 1978)(conclusory allegation of ineffective assistance of counsel was properly summarily denied by District Court); *Bryson v. United States*, 268 F.3d 560, 562 (8th Cir. 2001)(conclusory allegations are insufficient to establish ineffective assistance); *Estes v. United States*, 883 F.2d 645, 647 (8th Cir. 1989)(conclusory allegation insufficient to rebut strong presumption of counsel's competence); and, *Hollis v. United States*, 796 F.2d 1043, 1046 (8th Cir. 1986)(vague and conclusory allegations are insufficient to state a ground for relief under § 2255).

Ordaz has another problem preventing relief on this ground. The Eighth Circuit does not recognize a claim of "cumulative error." *Pryor v. Norris*, 103 F.3d 710, 714 n. 6 (8th Cir. 1997)(cumulative error does not call for habeas relief, as each habeas claim must stand or fall on its own); *United States v. Stewart*, 20 F.3d 911, 917 (8th Cir. 1994)("we now believe that individual constitutionally insignificant errors cannot be aggregated to create a constitutional violation); *Bird v. Armontrout*, 880 F.2d 1, 11 (8th Cir. 1989), *cert. denied*, 494 U.S. 1019, 110 S.Ct. 1326, 108 L.Ed.2d 501 (1990)(cumulative error does not call for habeas relief, as each habeas claim must stand or fall on its own); and, *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006)("we repeatedly have recognized 'a habeas petitioner cannot build a showing of prejudice on a series of errors, none of

which would by itself meet the prejudice test'").

For the reasons just mentioned, Ordaz's ineffective assistance of counsel claim on this ground fails.

### F.  First, Second, Fourth, Fifth, Sixth, and Eighth Amendment Claims

For his final ground for relief, Ordaz argues that his conviction and sentence violate his right to freedom of speech, to keep and bear arms, to petition, to be free of unreasonable search and seizure, to due process of law, his right to counsel, to jury trial, to confrontation of witnesses, to present a defense, to compulsory process, and to be free of cruel and unusual punishment. (Doc. 102, p. 9) Ordaz cites no supporting factual or legal authority for this catch-all claim, and it is subject to summary dismissal. The claim is also subject to procedural default.

Ordaz failed to raise these constitutional claims in his direct appeal, and as such, he has procedurally defaulted these claims. The Eighth Circuit has made clear that "[r]elief under § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996), citing *Poor Thunder v. United States*, 810 F.2d 817, 821 (8th Cir. 1987).  A movant may not raise constitutional issues for the first time on collateral review without establishing both cause for the procedural default and actual prejudice resulting from the error. *Id.* "Cause . . . requires a showing of some external impediment preventing counsel from constructing or raising the claim." *McClewsky v. Zant*, 499 U.S. 467, 497 (1991). "For cause to exist, the external impediment, whether it be government interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *Id.*

Ordaz merely states, in conclusory fashion, a litany of constitutional rights and protections that he vaguely claims his conviction and sentence violate. He offers nothing in his § 2255 Motion to support a finding that some external impediment prevented him from presenting his ground five claims on direct appeal. As such, the Court need not reach the actual prejudice component of the test to overcome his procedural default. *Ashker v. Class*, 152 F.3d 863, 871 (8th Cir. 1998), citing *Engle v. Isaac*, 456 U.S. 107, 134 n. 43, 102 S.Ct. 1558, 71 L.Ed2d 783 (1982). Ordaz's § 2255 Motion also fails to establish any miscarriage of justice through actual innocence on his ground five claims. The record shows that he plead guilty to the drug trafficking offenses because he was, in fact, guilty of them. (Doc. 96, p. 7) He does not now assert in his § 2255 Motion some factual or legal basis to support a claim of actual innocence. Ordaz raises these ground five issues for the first time in this collateral proceeding, and he has not alleged nor demonstrated any "cause and prejudice" or "actual innocence" to overcome his procedural default of these issues.

Beyond his procedural default, Ordaz utterly fails to state any supporting facts for the alleged constitutional violations. Despite the format of the § 2255 Motion advising him to set forth supporting facts ("Do not argue or cite law. Just state the specific facts that support your claim")(Doc. 102, p. 9), Ordaz ignores that admonition and states no facts whatsoever. Rule 2(b), Rules Governing § 2255 Proceedings, requires a petitioner to "state the facts supporting each ground." The Eighth Circuit has frequently held that vague and conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255. *Smith v. United States*, 677 F.2d 39, 41 (8th Cir. 1982)(a conclusory allegation, unsupported by specifics, is a proper subject for summary dismissal). *See also Carpenter v. United States*, 720 F.2d 546, 548 (8th Cir. 1983); *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985); *Hollis v. United States*, 796

F.2d 1043, 1046 (8th Cir. 1986); and, *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Ordaz has procedurally defaulted these claims, has failed to set forth any specific facts supporting the claims, and they are subject to summary dismissal.

### III.  No Evidentiary Hearing Is Warranted

A movant is not entitled to an evidentiary hearing on a § 2255 motion if "the motion and the files and records of the case conclusively show that the [movant] is entitled to no relief." *Nguyen v. United States*, 114 F.3d 699, 703 (1997), quoting *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985). Such are the circumstances in this case. The undersigned recommends the summary dismissal of Ordaz's § 2255 Motion without an evidentiary hearing.

### IV.  No Certificate of Appealability Should Issue

When a district court has denied a motion under 28 U.S.C. § 2255, the movant may not appeal without obtaining a certificate of appealability. Such a certificate may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" under this section is a showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In other words, a "substantial showing" is made if "a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). In this case, Ordaz has not made a substantial showing of the denial of a constitutional right. The undersigned recommends that this Court deny any request for a certificate of appealability.

### V.  Conclusion

For the reasons and upon the authorities discussed above, Ordaz's claims are not supported

by the record in this case. I recommend that Ordaz's Motion, filed under 28 U.S.C. § 2255, be **DISMISSED with PREJUDICE**.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 23rd day of April, 2015.

/s/ *Mark E. Ford*

HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE